188 N.J. Super. 99 (1982)
456 A.2d 111
CLEARVIEW ESTATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF MOUNTAIN LAKES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1982.
Decided November 24, 1982.
*100 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Barry M. Johnston argued the cause for appellant (Dillon, Bitar & Luther, attorneys, Barry M. Johnston of counsel and on the initial and reply briefs; Michael F. O'Neill on the initial brief).
*101 Jay L. Kloud argued the cause for respondent (Sherman, Sherman & Kloud, attorneys; Jay L. Kloud on the brief).
The opinion of the court was delivered by MILMED, P.J.A.D.
The single issue involved in this appeal is whether 39.45 acres of respondent's land in the Borough of Mountain Lakes (borough) was actively devoted to agricultural or horticultural use during the entire period of the calendar years 1976 and 1977 and thus eligible for farmland assessment for 1978 under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. The borough denied respondent's application for farmland assessment for the tax year 1978 and assessed the land at $235,400.[1] On respondent's appeal to the Morris County Board of Taxation, that assessment was affirmed. Respondent's further appeal to the former Division of Tax Appeals was heard by the Division's successor, the Tax Court. The judge of the Tax Court who presided at the hearing determined that the land qualified for farmland assessment. Judgment was thereafter entered revising the land assessment downward to $900. The borough appeals. We reverse and remand for reinstatement of the initial assessment.
When respondent purchased 37 acres of the tract in 1965[2] the property was situated in a single-family residence zone. As a result of zoning changes, the land is now located partially in an economic development zone and partially in a residence zone. Throughout respondent's ownership of the property, forestry operations thereon were not a permitted use under the terms of the local zoning ordinance. Nonetheless, on May 1, 1975 respondent *102 entered into a forest management agreement with Eastern Forestry Service, Inc. (Eastern). The agreement, which was to remain in effect for ten years, provided for Eastern to implement and supervise a program for the development and marketing of timber on the property. The consulting forester for Eastern testified at the Tax Court hearing that in 1975 he made a survey of the property,
... cruised the timber and wrote up what is known as a report on forest management wherein I stipulated what kind of trees we had, how many by species, by sizes, volume and board feet, valuation, stumpage valuation, rate of growth, with recommendations as to how that property should be managed over that ten-year period.
Through the efforts of the consulting forester, respondent, on January 31, 1976, entered into a contract with Circle Corporation of Newfoundland, Pennsylvania, (Circle) under which Circle paid respondent $2,600 for the right to cut and remove approximately 75,000 board feet of the timber that had been marked for sale. Early in February 1976 Circle began a logging operation on part of the property and began removing trees. During the same month the consulting forester marked trees on ten acres of the property which had been designated for a "silviculture" timber stand improvement project. The logging operation lasted 12 days. It was stopped as an unpermitted use by order of the borough manager on February 24, 1976. The order remained in effect until modified on March 18, 1977 when the borough manager informed the consulting forester that the borough had no objection to respondent's "proceeding with the silvicultural phase" of its program, i.e., the "felling [of] diseased and poorly-formed trees in [the] area, leaving standing approximately 100 trees per acre." Eastern was to notify the borough when this work was completed.
While the stop order remained in effect, no active forestry activities took place on the property. Eastern's consulting forester testified:
... When we received the stop order we not only stopped the logging operation but we assumed that we were not to do any timber stand improvement work so *103 that was held off until early in '77 when the new manager, Mr. Bryan, came into the picture and gave us an okay to go ahead and do it on the recommendations of his attorney, incidentally.
The only forestry related activity which occurred on the property while the stop order was in effect was an on-site inspection in August 1976 by a state forester and Eastern's consulting forester, during which the state official approved the ten-acre timber stand improvement project. Additionally, the consulting forester designated about four separate acres for reseeding. In October 1976 respondent applied to the United States Department of Agriculture for cost-sharing assistance in connection with the silviculture activities to be completed on the ten-acre parcel. The application was approved and respondent received $200 in cost-sharing funds. In 1977, 4,000 seedlings were planted over an area of about 5.2 acres and a second application for cost-sharing was filed in connection with another six-acre tract for timber stand improvement. Also in 1977, from 10 to 16 acres of the 39.45-acre tract were thinned in accordance with the silvicultural program, and respondent applied for and obtained certification of the tract "as a tree farm under the New Jersey tree farm system for the growing of timber as a crop."
After concluding that respondent had established its eligibility for farmland assessment for 1978, the judge of the Tax Court who heard the matter commented that he "need not consider the logging operation and the effect of the stop order on plaintiff's claim for farmland assessment." Later on in his letter opinion he properly observed:
The borough correctly contends that it had the authority to prohibit forestry operations entirely on plaintiff's [respondent's] property. Kinnelon v. South Gate Associates, 172 N.J. Super. 216 (App.Div. 1980).[3]
He nonetheless concluded that
... since logging was only one aspect of a multi-faceted forestry effort, the fact that the logging lasted only 12 days and not the entire year is irrelevant.
*104 We disagree. Logging was obviously essential in the timber marketing phase of respondent's planned forestry operation upon which it grounds its claim for farmland assessment. The borough's stop order called a halt to that aspect of the program as well as to implementation of the overall forestry operation. And we again note that at no time during the years in question, viz., 1976 and 1977, was forestry operation a permitted use of the property under the terms of the borough's zoning ordinance.
The valuation, assessment and taxation of land under the Farmland Assessment Act of 1964 (the act), N.J.S.A. 54:4-23.1 et seq., is governed by the specific terms of that legislation, the rules and regulations promulgated pursuant thereto by the Director of the Division of Taxation (Director), N.J.A.C. 18:15-1.1 et seq., see N.J.S.A. 54:4-23.21, and the enabling constitutional amendment pursuant to which the legislation was enacted. N.J. Const. (1947) Art. VIII, § I, par. 1, as amended. Thus, by the clear terms of the constitutional amendment, the legislation and the Director's regulations, the qualifying land must, in the first instance: (1) be "actively devoted to agricultural or horticultural use" and (2) have "been so devoted for at least the 2 successive years immediately preceding the tax year in issue." N.J.S.A. 54:4-23.2, N.J.A.C. 18:15-3.1. In keeping with the constitutional and statutory mandates, the Director, by N.J.A.C. 18:15-3.1, has specified:
(a) Land eligible for farmland assessment in addition to meeting the qualifications provided in sections 3.2 through 3.5 of this chapter, must have been actively devoted to agricultural or horticultural use as defined in subchapter 6 (Actively devoted) of this chapter for at least two successive years immediately preceding the tax year for which such assessment is requested.
1. Example: Where application for farmland assessment is made for the tax year 1978, the land must have been actively devoted to agricultural or horticultural use during the entire period of the calendar years 1976 and 1977.
At the hearing of the matter in the Tax Court the taxpayer, plaintiff-respondent Clearview Estates, Inc., had the burden of establishing the eligibility of its land for farmland assessment under the act. From the record before us, it is *105 obvious that the burden was not sustained. Respondent failed to prove that its land had been "actively devoted to agricultural or horticultural use during the entire period of the calendar years 1976 and 1977." The testimony of its own manager for the project, Eastern's consulting forester, established that the borough's stop order of February 24, 1976 effectively halted "not only ... the logging operation" but "any timber stand improvement work" as well "until early in '77." Moreover, at no time was the land lawfully devoted to any agricultural or horticultural use. It is clear to us that the claimed forestry operations were not a permitted use of the tract under the terms of the borough's zoning ordinance. We find nothing in the Farmland Assessment Act of 1964 or in the enabling constitutional amendment which suggests that land used in violation of the local zoning ordinance can qualify for farmland assessment. The use must be lawful, i.e., a permitted use. We so hold. In the circumstances, the borough had the right to issue its February 24, 1976 stop order to prevent continuation of the unlawful use. See § 9 of the Municipal Land Use Law, L. 1975, c. 291, N.J.S.A. 40:55D-18, effective August 1, 1976, and its predecessor statute N.J.S.A. 40:55-47. See, also, Demarest v. Heck, 84 N.J. Super. 100, 108 (App.Div. 1964).
The judgment of the Tax Court under review is reversed. The matter is remanded to the Tax Court for the entry of judgment reinstating the original assessments of the subject property for 1978, as affirmed by the Morris County Board of Taxation, viz.,

 Land $235,400
 Improvements 300
 ________
 Total $235,700

We do not retain jurisdiction.
NOTES
[1] The assessment of $300 for "Improvements" on the land, viz., a barn-like structure, is not at issue.
[2] The remaining "almost three acres" was bought "a few years later."
[3] Certification denied, 85 N.J. 94 (1980).