SMALL, P.J.T.C.
The issue before the Court on cross-motions for summary judgment is whether the failure to establish and file a woodland management plan, pursuant to N.J.S.A. 54:4-23.3(a) before January 1, two years before the year for which farmland assessment is sought, will result in the denial of farmland assessment.
For the reasons discussed below, I have determined that summary judgment should be granted for plaintiff, Alexandria Township. Despite it not being explicitly stated in the statute, the implementing regulations, or any yet-decided case, I find that the woodland management plan must be filed at least two full years before the year in which the farmland assessment is sought in order to comply with the requirements of the statute.
Philip and Joan Orban purchased a parcel of property (Block 3, Lot 40.09) in Alexandria Township. They obtained subdivision approval in 1999; ten lots were separately assessed for the year 2000 (Lots 40.01 to .10). In May of 2000, the Orbans commenced work on a woodland management plan so that the property could qualify for farmland assessment. John Perry, a registered forester, was hired by Mr. Orban on December 19, 2000 to review the woodland management activities which Mr. Orban had performed since May of 2000. Mr. Perry confirmed that Mr. Orban had been complying with the woodland plan and was involved in the active management of the woodland plan. Mr. Perry then prepared a written woodland management plan, which was filed by Mr. Orban with the Department of Environmental Protection and the assessor of Alexandria Township on May 26, 2001. During 2001, hardwood trees were sold producing an income in excess of $6,000. In 2002, additional trees were cut and sold in accordance with the woodland plan, producing an income in excess of $6,000. Timely *301 applications for farmland assessment under the woodland management plan were filed on or before August 1, 2001 and August 1, 2002.
The assessor denied farmland assessment for the year 2003 based upon the fact that the formal woodland management plan was not filed until May of 2001. It is the position of the tax assessor that he cannot grant an application for farmland assessment unless the formal plan is filed two full calendar years before the tax year for which farmland assessment is sought.
On January 13, 2003, Lot 40.09 was sold to Thomas and Susan Pajak. On March 28, 2003, the Orbans and Pajaks filed tax appeals with the Hunterdon County Board of Taxation (the County Board) appealing the denial of farmland assessment for the year 2003. On June 13, 2003, the County Board granted the farmland assessment on the properties. On July 28, 2003, Alexandria Township filed these appeals seeking to reverse the County Board’s determinations granting farmland assessment for the defendants’ properties. On February 11, 2004, plaintiff filed this motion for summary judgment, and on March 3, 2004, defendants filed a cross-motion for summary judgment.
For purposes of plaintiffs motion, I must assume that the taxpayers have done everything to qualify for farmland assessment in the tax year 2003 except to have filed the woodland management plan on or before January 1, 2001. R. 4:46-2; Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995) (in considering a summary judgment motion the court must consider the facts in the light most favorable to the non-moving party). Plaintiff Alexandria Township contends that should it not prevail on its motion, the motion of the taxpayers is not ripe for summary judgment because without regard for the time when the plan had to have been filed there was not sufficient activity on the taxpayers’ properties to qualify for farmland assessment. Thus, the sole issue for determination at this time is whether the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to -23.23, requires that for a parcel to qualify for farmland assessment as a woodlot, the written and approved woodland management plan required by *302 the statute must be filed on or before January 1, two full years prior to the year for which farmland assessment is sought.
In order to qualify for farmland assessment, a property must meet the following requirements. The area must:
(1) be at least five acres;
(2) be actively devoted to agricultural or horticultural use;
(3) be devoted to agricultural use for at least the two successive years immediately preceding the tax year in issue;
(4) have gross sales of agricultural and horticultural products averaging at least $500 per year during the two-year period immediately preceding the tax year in issue or have the owner provide dear evidence of anticipated yearly gross sales amounting to at least $500 (plus additional amounts for acreage over five acres) within a reasonable period of time [1]; and
(5) have an application for valuation as farmland submitted in a timely manner. N.J.S.A. 54:4-23.2 and -23.6.
For woodland to be deemed to be in agricultural use the property owner must meet additional conditions set forth at N.J.S.A. 54:4-23.3(a), (b) and (c):
(1) the property owner must establish and comply with the woodland management plan;
(2) the property owner must hire a forester approved by DEP who must attest annually to compliance with the requirements of the woodland management plan;
(3) the property owner must submit annually to the assessor an application for farmland assessment qualification under N.J.S.A. 54:4-23.13, which application must include the following items: (a) a copy of the woodland management plan, (b) written documentation by the property owner and an approved forester that the property is being managed in compliance with the woodland management plan, (c) a supplementary woodland data form, and (d) a map of the land showing activity on the property;
*303 (4) the property owner is required to submit to the DEP an exact copy of his application and accompanying information submitted to the assessor.
The DEP must review each application to insure compliance with the woodland management plan, such review to include an on-site inspection of the property during one of the first three years in which an application is received.
The DEP must thereafter notify the assessor that the property has, or has not, established or complied with the woodland management plan in accordance with N.J.S.A. 54:4-23.3 and -23.3a. If the DEP indicates to the assessor that the applicant is not in compliance, the assessor shall disapprove the application. N.J.S.A. 54:4-23.3a. See Pio Costa v. Riverdale, 20 N.J.Tax 169, 175 (Tax 2002) and Estell Manor City v. Stem, 14 N.J.Tax 394, 413-14 (Tax 1995).
Tax exemptions represent a departure from the fundamental principle that all property shall bear its just and equal share of the public burden of taxation. DEP v. Franklin Tp., 181 N.J.Super. 309, 3 N.J.Tax 105, 119, 437 A.2d 353 (Tax 1981). Similarly, statutes granting preferential tax treatment must be strictly construed against the taxpayer since they provide benefits at the expense of all remaining taxpayers and the taxing district. Interstate 78 Off. Pk. Ltd. v. Tewksbury Tp., 11 N.J.Tax 172, 185 (Tax 1990). There is a presumption that the assessment made by the tax assessor is correct, and the burden of proving entitlement to a farmland assessment is on the taxpayer to show otherwise. Miele v. Jackson Tp., 11 N.J.Tax 97, 99 (App.Div.1989). In general, the burden of proof in a tax case is on the plaintiff. In this case the County Board has granted the farmland assessments. Nevertheless, because this is a case of an exemption, the burden remains on the taxpayer (defendant in this case) to prove its entitlement to an exemption. Princeton University Press v. Princeton Bor., 35 N.J. 209, 214, 172 A.2d 420 (1961).
Plaintiff does not contest the material facts and submits defendants’ brief to the County Board as a statement of facts. Plaintiff contends that since the woodland management plan was not in effect for two consecutive full years prior to the year for which *304 farmland assessment is sought, the subject property is not entitled to farmland assessment. Plaintiff states that for the purposes of its motion for summary judgment it does not raise any other issues regarding defendants’ application for farmland assessment. Defendants, to the contrary, contend that “actively devoted to agricultural or horticultural use” does not require that a woodland management plan be written and filed with a municipality on or before January 1 two years preceding the year in which farmland assessment for the woodlot is sought. Defendants contend that so long as their activities conformed to a woodland management plan filed after their activities commenced, they meet the standards of the statute.
In order to qualify for farmland assessment, the land must be actively devoted to agricultural or horticultural use for “at least the two successive years immediately preceding the tax year for which the valuation ... is requested.” N.J.S.A. 54:4-23.6. For example, where an application for farmland assessment is made for the year 2003, the land must be actively devoted to agricultural or horticultural use during the entire period of the calendar years 2001 and 2002. N.J.A.C. 18:15-3.1(a). “Devoted to agricultural or horticultural use” is defined as “land in which trees and forest products are produced for sale and such land is in compliance with the written approved woodland management plan.” N.J.A.C. 18:15-6.2(a)(6).
It should be noted that the amended regulation was adopted effective October 6, 1997 so that it would comply with N.J.S.A. 54:4-23.3 as amended by L. 1986 c. 201 and L. 1995 c. 276. See 29 N.J.R. 2803, 2804 (July 7, 1997) (proposing and explaining the reason for the amendment) and 29 N.J.R. 4335 (October 7, 1997) (adopting the amended regulation). Prior to 1986, the statute did not require a written woodland management plan. The 1986 amendments to the statute were intended to provide a reasonable means of eliminating the widespread practice of indiscriminate cutting of woodlands to meet the earned income requirements of farmland assessment. Statement, A.1925 (November 24, 1986). At that time, approximately 80% of all woodlands in the State were privately owned. Memorandum to Gover *305 nor Kean, from Michael R. Cole, Chief Counsel, and others (December 22, 1986), found in files of Governor’s Counsel, the State Archives. The Farmland Assessment Act’s tax benefit provisions with respect to woodlands in active agricultural use had been abused by land speculators. Ibid. The amendments were designed to close the loophole utilized by these speculators and land developers. Ibid.
The amendments clarified and limited the criteria for eligibility to receive the favorable tax treatment for woodlands contained in existing law by providing that land used exclusively for the production of tree and forest products would not be deemed to be in agricultural use unless the owner fulfilled certain additional criteria. Statement, A. No.1925 (November 24, 1986); Memorandum, to Governor Kean (December 22, 1986), supra. Chief among the additional conditions to be fulfilled by the owner of woodlands was the requirement that the landowner prepare and comply with a woodland management plan for the land. Memorandum to Governor Kean (December 22, 1986), supra.
The impact of these amendments to the statute and the conforming regulations are that the granting of farmland assessments for woodlands would be more rigorously monitored to avoid abuse. The requirement of a filed woodland management plan would enable an assessor to monitor activity on the land for compliance with that plan. See Wishnick v. Upper Freehold Tp., 15 N.J.Tax 597, 603 (Tax 1996). A plan prepared after the activities commenced could not as easily serve such a function.
The two successive pretax years (in which appropriate activity is required under the statute), in this case are 2001 and 2002, as the tax year for which farmland assessment is sought is 2003. Mt. Hope Mining Co. v. Rockaway Tp., 8 N.J.Tax 570, 575 (Tax 1986), citing N.J.S.A. 54:4-23.6.[2] “Pretax year” means the calendar year immediately preceding the “tax year”. N.J.A.C. 18:15-1.1. “Tax *306 year” means the calendar year in which the local property tax is due and payable. Ibid.
In Mt. Hope Mining Co., supra, the taxpayer hired a forest manager in the summer of 1980 to initiate a woodland management program (again, not the statutorily required written woodland management plan). Later, in 1981, the taxpayer engaged an experienced forester to compile a woodland management plan, which was completed and submitted to the municipality in April 1982. The taxpayer applied for farmland assessment for the tax year 1984 and was denied. The court considered “whether [the taxpayer] had begun devoting its land to statutory purpose as of January 1, 1982.” 8 N.J.Tax at 576. This court noted that:
beginning as early as November, 1981, pursuant to the November 12, 1981 letter contract, extensive planning and preparation were important in developing a comprehensive and thorough forest management plan. Moreover, [the taxpayer’s] subsequent April 1982 agreement with [the forester] to select loggers for bidding and cutting depended on the preexistence of a plan designating which stands and trees to cut.”
[8 N.J.Tax at 576]
Based on this information, this Court held that the taxpayer’s land “was actively devoted to the production for sale of trees or forest products for the two full years immediately preceding 1984, pursuant to N.J.S.A. 54:4-23.2 and -23.6.” Id. at 577.
In Clearview Estates, Inc. v. Mt. Lakes Borough, 188 N.J.Super. 99, 456 A.2d 111 (App.Div.1982), overruled on other grounds, Byram Tp. v. Western World, Inc., 111 N.J. 222, 544 A.2d 37 (1988), the taxpayer entered into a forest management agreement on May 1, 1975. A report on forest management was written and submitted to the municipality some time that year. This was for a tax year prior to the statute’s requirement for a woodland management plan. The report on forest management was submitted to show activity and a contract to have the activity undertaken. It was different from the woodland management plan required by the 1986 amendments to the statute. On January 31, 1976, the taxpayer entered into an agreement with a logging company in which the logging company would pay for the right to cut and remove timber. The logging operation lasted twelve days before the municipality stopped the operation as an unpermitted use of *307 the property. The operation was not allowed to resume until March 18, 1977. While the operation was stopped, no active forestry activities took place on the property. The Tax Court concluded that the property was eligible for farmland assessment. The Appellate Division reversed, holding that “Respondent failed to prove that its land had been ‘actively devoted to agricultural or horticultural use during the entire period of the calendar years 1976 and 1977.’ ” Clearview, supra, 188 N.J.Super. at 105, 456 A.2d 111 (emphasis added).
In Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273 (Tax 1981), aff'd in part, dismissed on other grounds, 4 N.J.Tax 534 (App.Div.1982), taxpayers filed for farmland assessment for the years 1975, 1977 and 1978. In 1973 and 1974, the taxpayers sold firewood and timber. On December 20, 1974, the taxpayer entered into an agreement under which another company would cut and remove timber. The forest management agreement was executed on April 23, 1975. The Tax Court denied the taxpayer’s appeal for farmland assessment for 1975, stating that it did not establish that five acres of woodland were devoted to agricultural use in the pretax years of 1973 and 1974. The only agricultural use during those years was from the sale of firewood; no evidence showed where the firewood was cut; and the forest management agreement did not commence until April 1975. Green Pond Corp., supra, 2 N.J.Tax at 286. The Tax Court also denied the farmland assessment for 1977, stating that the two consecutive years were 1975 and 1976, but the forest management agreement did not begin until April 23, 1975. Id., at 287. This court posed the question: “May the two-year requirement be satisfied by the one year and eight months showing made here?” Ibid. In deciding that the answer to the question was no, this court stated:
The first concerns the requirement that the five-acre showing be made for the two years preceding the tax year in question. Assuming, in this ease, that the management of the woodland both satisfies the five-acres requirement and qualifies the entire acreage, it must be shown to have been in effect for the two successive years immediately preceding the tax year. Those two years are 1975 and 1976. The management program, however, did not begin until April 23, 1975. Prior to that date a five-acre showing, as noted above, was not made. May the two-year requirement be satisfied by the one year and eight month showing made here? If that were sufficient, then a showing of one year and any part of the preceding year *308 would also suffice. The statute does not permit such a construction. The statutory reference to a two-year period is clear and precise. A two-year period is commonly understood to mean two entire calendar years. In the absence of an explicit indication of special meaning, words in a statute are to be given their ordinary and well-understood meaning. Where the wording of a statute is clear and explicit a court is not permitted to indulge in any interpretation other than that called for by the express words set forth. I find that plaintiffs must demonstrate the devotion of five acres to agricultural use for the two-year period commencing January 1,1975, and that such a showing has not been made. Accordingly, plaintiffs are not entitled to farmland assessment for the tax year 1977.
[Id., at 287 (citations omitted).]
I note that Mt. Hope Mining Co. v. Rockaway, supra, Clearview Estates Inc. v. Mt. Lakes, supra, and Green Pond Corp. v. Rockaway, supra, are all cases decided before the 1986 amendments requiring a written woodland management plan Thus, none of those cases dealt specifically with the issue of the filing of a woodland management plan, but only the issue of whether activities consistent with such a plan were taking place.
The same logic which leads to the conclusion that activity must be conducted over a full two years, extends to the requirement, starting after the 1986 amendments, that the required woodland management plan be in place for the two full years preceding the year for which farmland assessment is sought. Defendants contend that “actively devoted to agricultural or horticultural use” only requires activities relating to woodland management, and does not require a formal written woodland management plan to be compiled and submitted to the municipality. Defendants cite Mt. Hope Mining Co., supra, and Pio Costa v. Riverdale Bor., 20 N.J.Tax 169 (Tax 2002) in support of their position.
In Pio Costa, the taxpayer had a woodland management plan dated March 6, 1995 that covered a ten-year period. The taxpayer applied for farmland assessment for the years 1999, 2000 and 2001. Tax appeals filed for the tax years 1997 and 1998 were settled by the municipality. As part of the settlement, the municipality agreed to grant farmland assessment to the subject properties for 1997 and 1998. “The settlement, therefore, reflects an acknowledgement by the assessor and the municipality that the property was actively devoted to woodland management for those two years.” 20 N.J.Tax at 179. However, those years were not *309 before Judge Kuskin in that case, and he made no determination as to when the woodland management plan needed to be filed. Further, although the taxpayer in Pio Costa might have argued that the assessor in that case was estopped from asserting that a woodland management plan had to have been filed by January 1, two years prior to the tax year in which farmland assessment was sought, the parties in this case are not bound by such a decision. The waiver of the requirement that a woodland management plan be in place a full two years prior to the year for which farmland assessment was sought in the course of the settlement of that case was not before the court. Finally, the doctrine of estoppel is not readily invoked against governments, especially in tax matters. See Black Whale v. Director, 15 N.J.Tax 338, 351 (Tax 1995).
Defendants, in this case, contend that since the municipality in the Pio Costa case agreed to allow farmland assessment on the property for 1997, despite the fact that the woodland management plan was dated March 5, 1995, in all other cases a formal woodland management plan does not have to be in effect on January 1 two years before the year in which farmland assessment is sought in order to qualify for a farmland assessment. Defendant’s reliance on this statement is in error. Pio Costa did not hold that the land was qualified for farmland in 1997. The court merely noted that the issue was settled, and for purposes of the 1999 assessment, the court could consider the settlement as a finding that the land was devoted to agricultural or horticultural use for 1997 and 1998, not 1995, the year in which the woodlot management plan was not in effect on the first of January. The judge in Pio Costa did not consider the language of N.J.A.C. 18:15-6.2(a)(6) which clearly requires a written approved woodland management plan. That discussion of facts not decided in Pio Costa is not binding upon this court. It is at best mere dicta. Absent an Appellate Division decision, even a published trial court’s determination does not need to be followed. State v. Johnson, 203 N.J.Super. 436, 438, 497 A.2d 242 (Law Div.1985). The doctrine of stare decisis does not render the court impotent to correct its past errors. State v. Int’l Fed. Of Prof. and Technical Engineers, 169 N.J. 505, 534, 780 A.2d 525 (2001).
*310 In this case, defendants seek farmland assessment for the tax year 2003, thus N.J.S.A. 54:4 — 23.6 requires the land to have been actively devoted to agricultural or horticultural use for the two preceding years, 2002 and 2001. N.J.A.C. 18:15-3.1. Case law and statutes cited above indicate that the use must be during the entire two full calendar years preceding the year for which farmland assessment is sought. See, e.g., Clearview Estates, supra; Mt. Hope Mining, supra; and Green Pond, supra.
Land on which trees and forest products are produced for sale is “actively devoted to agricultural or horticultural use” when it is in compliance with a written approved woodland management plan. N.J.A.C. 18:15-6.2. A woodland management plan was written by Forester John Perry and filed by defendants on May 26, 2001. Defendants maintain that even though the woodland management plan was not written and filed until May 26, 2001, the activities were taking place on the land from January 1, 2001 in accordance with good forestry management and the implementation of the woodland plan that was later filed and approved. However, N.J.A.C. 18:15-6.2 requires the plan to be a “written approved management plan.” Since the plan in this case was not written or filed until May 26, 2001, the land does not meet the definition of actively devoted to agricultural or horticultural use for the full year 2001. Since it was not actively devoted to horticultural use for all of 2001, it cannot qualify for farmland assessment in 2003.
Two more points need mention. First, Wishnick, supra, makes clear that the purpose of farmland applications containing woodland management plans is to enable an assessor, particularly in the pretax years, to confirm on visits to the subject properties that they are being actively devoted to agricultural use in accordance with a filed and approved plan. Nothing can be in accordance with an approved plan in that sense until the plan is written, and an ex post writing and filing of a plan to conform the plan to the actual activities is not what is intended by the statute and regulations. I read the plain meaning of the statutes, the regulations, the 'cited cases, and the practical implications of these statutes, regulations, and cases to say that in order to be in compliance with *311 a plan, a plan must be drawn up, submitted, and approved prior to the activities undertaken in accordance with that plan. Accordingly, a woodland management plan must be filed by January 1 two years prior to the year for which farmland assessment as a woodlot is sought. This is consistent with the statutes, the regulations, and the decided case law, and, in particular, with the amendments to the statute in 1986 which were in part justified by what were then felt to be abuses in the woodland management farmland assessment programs in this State.
Second, F.M.C. Stores v. Morris Plains, 100 N.J. 418, 495 A.2d 1313 (1985) stands for two propositions: that (1) filing deadlines are to be strictly construed; and (2) in dealing with taxpayers, the government must turn square corners. Having an ambiguous date on which a woodland management plan can be filed complies with neither of these principles, and although the result in this case may hurt the taxpayer, it is essential in construing beneficial tax provisions that clear lines be drawn so that both taxpayer and municipality can be on adequate notice and make adequate plans for the tax base and so that taxes due can be anticipated.
The plaintiffs motions for summary judgment are granted. Accordingly, the defendants’ cross-motions are denied as moot.

 Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced thereon, any payments received under a soil conversation program, fees received for breeding, raising or grazing any livestock, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L.1964, c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time. N.J.S.A. 54:4-23.5.

 I note that both parties cite cases decided prior to Pio Costa, supra, which are discussed, infra, at 306-08. The earlier cases all dealt with tax years prior to the 1986 amendment to the statute, which imposed the requirement for a written woodland management plan.