MENYUK, J.T.C.
The issue in this case is whether there was a change in use of the subject property during 2004 which would warrant the impost *242 tion of farmland rollback taxes pursuant to N.J.S.A. 54:4-23.8. The subject property consists of approximately 56.65 acres of vacant land and is identified as Block 75, Lot 1.02 on the tax map of Hopewell Township. The contested assessment is as follows:
Tax Year Qualified Farmland Assessment Non-Qualified Taxable Value Rollback Assessment Additional Taxes
2002 $22,400_$546,200_$523,800 $15,923.52
2003 $22,400_$651,300_$628,900 $17,231.86
Prior to tax year 2004, the subject property had been assessed for a number of years as farmland under the Farmland Assessment Act of 1964, as amended and supplemented, N.J.S.A. 54:4-23.1 to -23.23 (“Act”). In previous actions, this court affirmed the judgments of the Mercer County Board of Taxation for tax years 2004 and 2005, and rejected plaintiffs claim that the subject property was entitled to assessment as farmland for those years. The rollback assessments in issue here were imposed by judgment of the Mercer County Board of Taxation while the 2004 and 2005 appeals were pending in this court. Plaintiff timely appealed the rollback judgment to the Tax Court.
The Act provides for rollback taxes “when land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of [the Act], is applied to a use other than agricultural or horticultural.” N.J.S.A. 54:4-23.8. The rollback taxes are equal in amount to the difference between the taxes paid on the basis of the valuation and assessment of the land as farmland and the taxes that would have been payable if the land had been valued in the same way as other property in the taxing district. Ibid. “If the tax year in which a change in use of the land occurs, the land was not valued, assessed or taxed [as farmland under the Act], then such land shall be subject to rollback taxes for such of the two tax years immediately preceding, in which the land was valued, assessed and taxed hereunder.” Ibid. The defendant contends that a change in use of the subject property from agricultural to non-agricultural took place in 2004. *243 Because the property was not assessed as farmland in 2004, rollback taxes were assessed for 2002 and 2003.
Plaintiff filed an application for farmland assessment for tax year 2005 with the assessor on July 28, 2004. The application reflected agricultural activities during 2004, the year in which the municipality alleges that the change in use of the property occurred. The application identified the subject property as consisting of 27 acres of cropland and 29.65 acres of woodland, a different allocation from the prior year, in which only 25 acres of woodland was indicated. Nothing on the application indicates that farmland assessment was claimed on the basis of farming activities during 2004. The claim for farmland assessment was based solely on the anticipated harvest of forest products.
The application also stated that a ten year woodland management plan had been prepared by Dennis Galway, a forester, in 2003, and that plaintiff anticipated harvesting five cords of firewood and 50,000 board feet of timber from which he anticipated $25,000 in income. The woodland data form similarly indicated that five cords of firewood had been or would be harvested on two acres with an anticipated income of $700, and that 50,000 board feet of timber had been or would be harvested on twenty acres, with an anticipated income of $25,000. Mr. Galway’s certification to the woodland data form, dated July 27, 2004, stated that he had reviewed the form and that the landowner was in compliance with the provisions of the filed woodland management plan. He further certified that the forest management practices cited on the form had been completed. Plaintiff also certified that the property was actively devoted to an agricultural use and that he was following the approved woodland managements plan and program as evidenced by the forest management practices completed “this year.” Plaintiffs certification was dated July 27, 2004. The woodland data form filed with the farmland assessment application indicated that no forestry number had been assigned to the subject property at that time.
The assessor testified that she had received a woodland management plan from plaintiff in October 2003, but that it did not *244 contain a forestry number, indicating to her that it had not been reviewed or approved by the Department of Environmental Protection (“DEP”). A letter from Jim Haase, a regional forester for DEP, dated May 7, 2004, stated that as of the date of the letter, plaintiff had not submitted any forms, application material or management plan to the New Jersey Forest Service. He confirmed that no information had been entered into DEP’s farmland assessment database for the subject property. By letter dated August 9, 2004, Mr. Haase confirmed that he had, at that point, received the requisite paperwork regarding plaintiffs woodland management program.
This court affirmed the denial of farmland assessment for tax year 2005, because the woodland management plan had not been in place the requisite two years. Alexandria Tp. v. Orban, 21 N.J.Tax 298, 300 (Tax 2004). Apart from the claimed activities with respect to the woodland, the application set forth no other basis for farmland assessment for tax year 2005.
At trial, plaintiffs assessor testified that the subject property consisted of 56.26 acres, with frontage on Federal City Road and on Blackwell Road. She described the property as being half wooded and half fields, with a pipeline going through the property. The property is irregularly shaped. On a copy of a portion of the municipal tax map showing the subject property, the assessor identified the portions of the property that consisted of woods. From an undated photograph of an aerial view of the property in evidence, it appears that somewhat more than half the property was wooded. The tax map and the aerial view also show that the subject property could be accessed via Cheyenne Drive which runs perpendicular to the subject’s property line and ends there. No road is visible within the subject property on the aerial photograph.
The assessor testified that she inspected the property for evidence of agricultural activities on July 28, 2004, July 29, 2004, and on January 6, 2005. Apart from these visits which were specifically made to inspect the subject property, the assessor also testified that she drove by the property every so often during 2004.
*245 On each of her three inspection trips, the assessor took pictures of the subject. The three pictures taken on July 28, 2004 and the one picture taken on January 5, 2005 were all taken from various points along Blackwell Road. Each picture shows weedy and overgrown grassy areas in the foreground with trees at varying distances beyond. The pictures taken on July 29, 2004 were taken from Federal City Road and show overgrown fields or pasture in the foreground. The wooded area appears some distance away from the road. The pictures appear to be consistent with the assessor’s verbal description of the property and with her identification of the wooded portion of the subject property on the tax map. None of the pictures show foresting activity or evidence of the cutting of wood, but the pictures are sufficiently distant from the wooded portion so that any such activities would not be readily visible in the photographs.
The assessor testified that she did not obseive any foresting activities or farming activities on the subject property at any time during 2004. On cross-examination, she conceded that she had not entered the subject property to see if there had been any timbering or cutting of trees in its interior, because she did not see any improved road or path by which she could enter by car, including the area where Cheyenne Drive abutted the subject property. She stated, however, that foresting activities would be evidenced by some sort of disturbance at the edges of the property abutting the access roads, so that trees and firewood could be removed, and that she had not observed any such disturbance Photographs taken by plaintiff showed some evidence that trees had been cut but not removed from the subject property. The photos were of little evidential value, however, since plaintiff testified that the photographs had not been taken until 2006.
The assessor testified that she had not received any receipts for the sale of firewood or timber from plaintiff in either 2003 or 2004. Plaintiff testified that he could not recall whether or not he had given receipts to the assessor. Plaintiff testified that he himself had cut five cords of firewood on the property in Spring 2004, but that he had no receipts for the sale of the wood. He also testified that only firewood had been cut during 2004, and that the antici *246 pated harvest for 2004 of 50,000 board feet of timber had not taken place in 2004. Plaintiff confirmed that, apart from the harvesting of five cords of firewood, no other foresting or agricultural activities had taken place on the subject property in 2004.
Plaintiff contends that a woodland management plan covering 29.65 acres had been filed with the municipality in October 2003, that he harvested firewood in 2004, and that there was no abandonment of use during 2004. He also claims that the remainder of the property, the twenty-five acres that had been farmed at some point, had been left fallow in 2004. The defendant municipality contends that there was no agricultural activity and no woodland activity on the property in 2004, and that the lack of such activity in 2004 is sufficient to impose rollback taxes for 2002 and 2003.
Rollback assessments may be imposed only when the property “is applied to a use other than agricultural or horticultural.” N.J.S.A. 54:4-23.8. This court has held that where property continues to be used for agricultural or horticultural purposes, but is not eligible for assessment as farmland due to a failure to meet other requirements of the Farmland Assessment Act, such as, for example, the minimum income requirements, N.J.S.A. 54:4-23.5, the property is not subject to rollback taxes. Burlington Tp. v. Messer, 8 N.J.Tax 274, 283 (Tax 1986), aff'd 9 N.J. Tax 634 (App.Div.1987). See also Dep’t of Environmental Protection v. Franklin Tp., 181 N.J.Super. 309, 3 N.J.Tax 105, 128, 437 A.2d 353 (Tax 1981) (failure to file farmland assessment applications does not trigger rollback taxes; rollback hinges on change of use and not on filing of application forms). The municipality has the burden of proving that there has been a change in use of the subject property. Miele v. Jackson Tp., 11 N.J. Tax 97, 99 (App.Div.1989).
This court has consistently held, however, that a change from agricultural use to non-use is sufficient to trigger the imposition of rollback taxes. Burlington Tp. v. Messer, 8 N.J.Tax 274 (Tax 1986), aff'd 9 N.J.Tax 634 (App.Div.1987); South Brunswick Tp. v. Bellemead Development Corp., 8 N.J.Tax 616, 624-25 (Tax 1987); Angelini v. Upper Freehold Tp., 8 N.J.Tax 644, 650-51 *247 (Tax 1987); Hamilton Tp. v. Lyons Estate, 8 N.J.Tax 112, 120 (Tax 1986).
Land is deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man. N.J.S.A. 54:4-23.3. That definition includes land devoted exclusively to the production for sale of tree and forest products other than Christmas trees, only where three additional conditions are met: (1) the landowner establishes and complies with the provisions of a woodland management plan for the land that is prepared in accordance with DEP guidelines; (2) the landowner and a DEP-approved forester annually attest to compliance with the provisions of the plan; and (3) the landowner annually submits an application to the assessor (with a copy to DEP), accompanied by the woodland management plan, a supplementary woodland data form setting forth woodland management actions taken in the pre-tax year, the type and quantity of tree and forest products sold, and the amount of income received or anticipated for same, and a map of the land showing the location of the activity and soil group classes of the land. N.J.S.A. 54:4-23.3a, b and c.
In this case, by the summer of 2004, plaintiff had on file with the municipality and with DEP the required woodland management plan. The application for farmland assessment indicated that five cords of fuelwood and 50,000 board feet of timber had been or would be harvested in 2004. The woodland data form indicated that these activities were anticipated in 2004, and had not actually occurred. Plaintiff and his forester both certified as to compliance with the woodland management plan as of July 27, 2004. The farmland assessment application and supporting data were filed with both the municipality and with DEP. Mr. Haase’s letter of August 9, 2004 stated that the application satisfied DEP reporting requirements. I conclude that the property identified as woodland on the application for farmland assessment for tax year 2005 was “in agricultural use” within the meaning of N.J.S.A. 54:4-23.3, and fulfilled the requirements of subsections a, b and c of that statute.
*248 Defendant asserts that there was no woodland management plan “in place” in 2004 and that there was, therefore, a change in use. In Alexandria Tp. v. Orban, supra, 21 N.J.Tax at 310, Judge Small held that the woodland management plan required by N.J.S.A. 54:4-23.3a must be filed at least two full calendar years before the year in which farmland assessment is sought in order for the property to be eligible. Id. at 310. In Orban, the court explained that in order to qualify for farmland assessment, the land must be actively devoted to agricultural use for at least two successive years before the year for which farmland assessment is requested. Id. at 304; N.J.S.A. 54:4-23.6. The court also explained that the statute had been amended in 1986 to require a woodland management plan, which was “intended to provide a reasonable means of eliminating the widespread practice of indiscriminate cutting of woodland to meet the earned income requirements of farmland assessment.” Orban, supra, 21 N.J.Tax at 304. Further, “[t]he requirement of a filed woodland management plan would enable an assessor to monitor activity on the land for compliance with that plan.” Id. at 305.
Because the woodland management plan in this ease was not filed with DEP until the summer of 2004 and property must be actively devoted to agricultural purposes for at least two calendar years before it is eligible for farmland assessment, N.J.S.A. 54:4-23.6(a), the plan is not regarded as being in place until January 1, 2005 for purposes of satisfying the requirements for farmland assessment, and the earliest year for which the subject property would again be eligible for farmland assessment based on activities taken pursuant to the woodland management plan would be tax year 2007.[2] Orban, supra, 21 N.J.Tax at 310. That the plan was not “in place” until January 2005 is not relevant to whether the property was applied to a purpose other than agricultural or horticultural in 2004 for purposes of application of the rollback tax. N.J.S.A. 54:4-23.8. If the property is deemed to be in agricultural use pursuant to N.J.S.A. 54:4-23.3, a rollback assessment may not *249 be imposed. I conclude that the municipality has not met its burden of establishing a change in use of 29.65 acres of the subject property during 2004.
Having concluded that the portion of the property claimed to be woodland was in agricultural use, there remains twenty-seven acres of the subject property which was not listed as woodland in the application for farmland assessment or on the woodland data form. At trial, plaintiff contended that the land had been left fallow, and that there was no change in use.
As already noted, it is well settled that a failure to use previously qualified farmland for agricultural or horticultural use is a change of use and that a cessation of farming is a nonagricultural use. Alpha-Bella VI, Inc. v. Clinton Tp., 14 N.J.Tax 597, 623 (Tax 1995) (citing collected cases). Leaving land fallow for a period of time in order to improve the soil for subsequent crops is not the same as ceasing to use the land. Ibid. “Leaving land fallow is not a change of use as intended by the roll-back statute, but instead, is comparable to rotating crops and under correct circumstances is a prudent and recommended agricultural devotion.” Lyons Estate, supra, 8 N.J.Tax at 119. Nothing in the application for farmland assessment filed on July 28, 2004 for tax year 2005 indicated that any of the land was being left fallow for puiposes of improving the soil. At trial, plaintiff conceded that, apart from the woodland activity, there was no agricultural activity on the property during 2004. I conclude that there was no intent to let the land lie fallow for puiposes of improving the soil and returning it to agricultural use at some future date. The remaining twenty-seven acres simply ceased being used for agricultural purposes in 2004.
Accordingly, I conclude that rollback taxes were appropriately assessed on twenty-seven acres (the crop land) of the subject, and that 29.65 acres (the woodland) remained in agricultural use. Pursuant to R. 8:9-3, the parties shall submit to the court within thirty days of this opinion computations as to the rollback tax assessment on twenty-seven acres of the subject property for tax years 2002 and 2003 and the correct assessment of 29.65 acres as *250 farmland for the same tax years. If plaintiff and the municipality cannot agree as to the amount of the assessment, they shall, on notice to the adverse party, submit proposed computations to the court pursuant to R. 8:9-4 within thirty days.

 For purposes of this action, whether the property was actively devoted to an agricultural use during 2004 is not an issue and I need not decide it.