SUNDAR, J.T.C.
In its opinion of February 14, 2014 addressing the parties’ summary judgment motions, this court had concluded that Plaintiff (“Turnpike”) did not fit within the definition of a “local government unit” for purposes of N.J.S.A. 54:4-23.8 which provides an exemption for roll-back taxes if lands are acquired by, among others, a local government unit for “recreation and conservation purposes.” The court thereafter asked the parties to brief whether the Turnpike could or should be considered as “the State” for purposes of the same exemption.[1] The Turnpike argues that it is the alter ego of the State and thus qualifies. Defendant (“Township”) contends otherwise, and adds that property acquired (“Subject”) by the Turnpike to comply with another unrelated statute’s mitigation requirements cannot qualify even if such property is transferred by the Turnpike to, and will be held by, the *160 New Jersey Department of Environmental Protection (“NJDEP”) for conservation purposes.
The court concludes that the Turnpike is not the State for purposes of the roll-back tax exemption. It therefore does not reach the issue of whether the Turnpike’s transfer of the Subject to the NJDEP as part of its mitigation obligation in connection with the Turnpike widening Project qualifies as a purchase for “recreation and conservation purposes.” Therefore, the Township’s motion for summary judgment is granted and the complaint is dismissed.

FACTS

The facts are detailed in the court’s prior opinion and remain unchanged. Therefore, the facts in the court’s prior opinion equally apply here but will be recounted briefly for context in this opinion.
In connection with its project to widen and reconfigure a portion of the highway from interchange 6 to interchange 9 (“Project”), the Turnpike obtained permits from the NJDEP since the Project would impact certain protected freshwater wetlands. To satisfy its obligation of, among others, mitigation under these permits, the Turnpike purchased the “Brookland Mitigation Site” (the Subject at issue here) in 2010 by paying approximately $4 million to the owner in lieu of condemnation.
The Subject comprised contiguous Lots 6, 7, 10, 11 in Block 6, and Lots 1 and 2 in Block 7, measuring in total approximately 397.47 acres. None of these parcels were designated as Preserved Farmland or Green Acres properties. A parcel identified as Lot 40, in Block 6 totaling about 11.775 acres over which the owner had created a conservation easement in favor of the Township by deed of March 27,1986, was not included in the deed involving the purchase of the Subject by the Turnpike.
For tax year 2010, the Subject was assessed as farmland qualified pursuant to the Farmland Assessment Act of 1964 (the “FA-Aet”). It is undisputed that the Subject was not used for agricultural or horticultural or tree production/woodland management purposes after the Turnpike purchased it in 2010.

*161
ANALYSIS

The Turnpike’s summary judgment motion, as amplified by the recent briefing, continues to maintain that a change in title or ownership of land previously farmland assessed does not trigger a rollback if the “new use is exempt.” The new use, per the Turnpike, is its acquisition of the Subject for mitigation purposes. The exemption, per the Turnpike, is provided by N.J.S.A. 54:4-23.8, which incorporated the “Green Acres” roll-back exemption allowed by N.J.S.A. 13:8C-29(b) (the Garden State Preservation Trust Act or “GSPTA”).
N.J.S.A. 54:4-23.8 reads as follows:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of [the FA-Act], is applied to a use other than agricultural or horticultural, it shall be subject to ... roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the two tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
Notwithstanding the provisions of any law, rule, or regulation to the contrary, land which is valued, assessed and taxed under the provisions of [the FA-Act] and is acquired by the State, a local government unit, a qualifying tax exempt nonprofit organization, or the Palisades Interstate Park Commission for recreation and conservation purposes shall not be subject to roll-back taxes. As used in this section, “acquired,” “local government unit,” “qualifying tax exempt nonprofit organization,” and “recreation and conservation purposes” mean the same as those terms are defined pursuant to ... [N.J.S.A. 13:8C-3],
All three conditions must be met in order to receive an exemption. It is undisputed that the Turnpike “acquired” the Subject. The other two conditions are disputed on a legal basis. The first is whether the Turnpike is “the State,” and the second is whether the Turnpike’s acquisition for mitigation equates to an acquisition “for recreation and conservation purposes.”

Is the Turnpike “the State” for Purposes of the Roll-Back Exemption?

As noted in this court’s prior opinion, the Turnpike is considered as an agency or instrumentality of the State, being created in but not of the New Jersey Department of Transporta *162 tion (“NJDOT”). The Turnpike argues it is an alter ego of the State based on the practicalities of its operations and direct/indi-reet control by the Governor on many of its funding decisions, and precedent so holding in the area of torts.
Since this case involves the GSPTA and the FA-Aet, the court examines those statutes. Neither statute defines “the State” for purposes of the roll-back tax exemption.
The NJDEP’s regulations titled “Green Acres Program,”[2] interpret the GSPTA. See generally N.J.A.C. 7:36-1.1 et seq.; 43 N.J.R. 252(a) (Feb. 7, 2011) (explaining that the proposed regulations are intended to further the Legislature’s purpose and intent of the GSPTA).[3] The definition accorded to the term “State” is “the State of New Jersey or the State of New Jersey acting by and through the Commissioner of the [NJDEP] as applicable.” N.J.A.C. 7:36-2.1.[4] The regulations do not address the roll-back exemption provision of the GSPTA, thus, do not interpret application of the same to “the State.” Neither do they interpret the exemption’s application to local government units or nonprofit entities although the entire body of the NJDEP’s Green Acres *163 Program regulations addresses acquisitions of real property by either of these entities only.
The regulations under the FA-Act applicable to the roll-back exemption pursuant to the GSPTA reiterate the statute in this regard. See N.J.A.C. 18:15-7.2. The only defined term therein is “recreation and conservation purposes.” See N.J.A.C. 18:15-1.1.[5]
Thus, the regulatory definitions under either statute are unhelpful as to whether “the State” includes its instrumentality or authority for purposes of the roll-back exemption.
The scheme of the GSPTA is in the realm and context of three areas of conservation: farmland, open space and historic sites/structures, which are administered by the NJDEP and by the Department of Agriculture (jointly with the NJDEP). See e.g. N.J.S.A. 13:8C-2 where the legislative findings reflect that the GSPTA was enacted pursuant to a “need to establish a program to serve as the successor to the programs established by” several Green Acres laws, including, “nine previous similar bond acts enacted in 1961, 1971, 1974, 1978, 1981, 1983, 1987, 1989, and 1992,” and to implement the same goals “of preserving open space, sensitive environmental areas, critical wildlife habitat, farmland, and historic resources.” The NJDEP is the only State agency mentioned as being authorized to acquire lands for recreation and conservation purposes. See e.g. N.J.S.A. 13:8A-4 (under the Green Acres and Acquisition Act of 1961, NJDEP “commissioner” to use funds to acquire lands); N.J.S.A. 13:8A-24 (under the Green Acres and Acquisition Act of 1971, acquisition of lands “shall be” by the NJDEP commissioner “in the name of the *164 State”); N.J.S.A. 13:8A-40 (same, under the Green Acres Land Acquisition and Recreation Opportunities Act); N.J.S.A. 13:8B-3 (“[a] conservation restriction or an historic preservation restriction may be acquired by the Commissioner of [the NJDEP] in the name of State”).
The above posture suggests that the acquisition of lands by “the State” for purposes of the GSPTA was predominantly confined to the NJDEP. This is strengthened by the GSPTA’s provision for payment-in-lieu of taxes required by the State when it acquires lands “in fee simple for recreation and conservation purposes” under the GSPTA because such lands are defined as “State parks and forests ... State wildlife management areas, and any other lands owned in fee simple by the State and administered by” the NJDEP “for recreation and conservation purposes.” N.J.S.A. 13:8C-29(a); 13:8C-30(a); 13:8C-29(e); 13:8C-30(e).[6]
“[WJords and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning.” N.J.S.A. 1:1-1. Further, “words alone do not control, rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms.” Loboda v. Township of Clark, 40 N.J. 424, 435, 193 A.2d 97 (1963). See also N.J.S.A. 1:1-2 (“State” is defined as a “State ... of the United States”).
The general scheme and intent of the GSPTA and its interpretive regulations, do not support an inclusion of the Turnpike within their language, scope and intent. Moreover, precedent under the FA-Act has also held that the Turnpike is not equivalent to the State of New Jersey. See New Jersey Turnpike v. Township of *165 Washington, 16 N.J. 38, 46, 106 A.2d 4 (1954) (lands acquired by the Turnpike are not State property because Turnpike was not “the alter ego of the State,” and merely because it was “in but not of the [NJDOT] ... does not make it any the less an independent entity, as ... clearly demonstrate[d]” by its enabling laws (citing and quoting New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 243, 69 A.2d 875 (1949))).
The same conclusion should also apply under N.J.S.A. 54:4-23.8. This is because the source of the exemption in the FA-Aet is the grant of the same in, and by, the GSPTA See St. Peter’s Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15, 878 A.2d 829 (2005) (an in pari materia construction is “especially pertinent” when the statutes in question are enacted in the same legislative session) (citation and quotation omitted). Consequently, an independent analysis of a definition of “the State” under the FA-Act, specifically, N.J.S.A. 54:4-23.8, is not required. Therefore, the court also does not address the Township’s “policy” argument that granting Turnpike the Green Acres exemption from roll-back taxes would deprive the Township of tax dollars since the GSPTA itself does not allow for this result.I *****[7]
The court’s conclusion that the Turnpike is not considered as “the State” for purposes of the Green Acres roll-back exemption renders unnecessary an analysis of the third requirement of the *166 statute, namely, whether the Turnpike’s purchase of the Subject for mitigation under the NJDEP laws, equates to a purchase for purposes of recreation and conservation.
The court also does not analyze whether, regardless of the Green Acres roll-back exemption, the roll-back statute should not apply to Turnpike’s purchase of the Subject under the “change in use” or non-use principles. The Turnpike agreed that the Subject’s qualification for farmland assessment was not at issue, and further that it did not use the Subject for agricultural or horticultural or tree production/woodland management purposes after it purchased the same in 2010. The Turnpike agrees that its acquisition is a “new use” and only argues that since the “new use” is exempt under N.J.S.A. 54:4-23.8, the roll-back taxes do not apply.
Nonetheless, and although unnecessary to the disposition of this case, the court observes that land previously used for agricultural, horticultural or woodland purposes is subject to rollback taxes if there is a non-use in succeeding years. See Wilson v. Township of Hopewell, 23 N.J.Tax 240, 246-247, 249 (Tax 2006) (“[t]his court has consistently held, however, that change from agricultural use to non-use is sufficient to trigger the imposition of rollback taxes” and “cessation of farming is a nonagricultural use”) (citations omitted).
Additionally, acquisition of previously assessed farmland for water reservoir construction and some open space conservation was deemed a change in use triggering roll-back taxes. See Dep’t of Envtl. Prot. v. Township of Franklin, 3 N.J.Tax 105 (Tax 1981), aff'd, 5 N.J.Tax 476 (App.Div.1983). The Tax Court rejected the NJDEP’s argument that acquisition for conservation was not a “change in use” and the similarity of goals under the FA-Act and the NJDEP laws of “preservation of open space” does not require a similarity of tax benefits which is aimed to “provid[e] the New Jersey farmer with some economic relief.” 3 N.J.Tax at 120-21. Rather, based upon the Constitutional mandate, roll-back taxes would apply to lands acquired for “open space conservation, recreation, or any other uses.” Id. at 120. In so holding, the *167 court had noted that Green Acres legislation (the Green Acres and Recreation Opportunities Bond Act of 1974, L. 1974, c. 102; and the Green Acres Bond Act of 1978, L. 1978, c. 118), which contained identical language of roll-back exemption as under the GSPTA, may be constitutionally infirm. It relied upon the Appellate Division’s footnote in New Jersey Turnpike Authority v. Township of Washington, 137 N.J.Super. 543, 548 n. 4, 350 A.2d 69 (App.Div.1975), aff'd, 73 N.J. 180, 373 A.2d 652 (1977), that a repealed statutory roll-back exemption for lands acquired by condemnation would likely have been infirm because the Constitution “uses mandatory language concerning the imposition of rollback taxes on lands which have been taxed under farmland assessment legislation” which “on its face ... allows for no exceptions to that mandate.”
Thus, the FA-Act’s incorporation of the GSPTA’s roll-back exemption leaves open the question whether the same would be constitutionally permissible, or whether it is permissible because the Legislature deemed open space and conservation as not being a change in use. The latter position is not supportable unless one concludes that the GSPTA repealed Township of Franklin, supra,[8] There is nothing in the GSPTA to so indicate.
Moreover, the regulations under the FA-Aet and the GSPTA do not consider farmland use to be the same as open space conservation. See e.g. 36 N.J.R. 1226(a) (March 2004) (responding to comments under the FA-Aet and noting that “Woodland must be deemed to be in agricultural use to be eligible for Farmland Assessment,” and thus, “managing and investing in habitat preservation, water improvement and the like, in and of themselves, while they may be activities supported by broad public policies, do not fall within the purview of the” FA-Aet and unless woodlands meet the statutory qualification requirements, being “enrolled in *168 government conservation programs” is insufficient to obtain farmland assessment); 43 N.J.R. 252(a) (Feb. 2011) (noting that “[i]t is not [NJDEP’s] intention to reduce the amount of active and viable farmland” and its “policy [is] to promote the retention of farmland through preservation and cooperative projects ...”).[9] Thus, “a local government unit may only apply to Green Acres to acquire active farmland if the owner is a willing seller or the property is on the market, is undergoing subdivision, or is integral to the proposed acquisition project.” Ibid. Where “farmland is acquired with Green Acres funding,” the NJDEP rules would allow the “local government unit or nonprofit to enter into agricultural leases to continue production on land, provided certain environmental safeguards are incorporated into the lease and provided the public is still afforded reasonable access to the land.” Ibid.
In sum, the court finds that the Turnpike is neither the State nor a local government unit for purposes of the Green Acres rollback exemption of N.J.S.A. 54:4-23.8. Since it fails to satisfy the second of the three conditions of that statute, the court does not explore whether the Turnpike’s acquisition of the Subject, purchased to satisfy its mitigation obligation to the NJDEP for disturbing or impacting certain protected lands, constitutes an acquisition for “conservation and recreation purposes,” the third condition. Therefore, summary judgment will be granted in favor of the Township.

CONCLUSION

The Township’s motion for summary judgment is granted. The complaint is dismissed. An Order and Judgment in accordance with this opinion will be issued.

 The court did not direct or permit the filing of reply briefs in its opinion of February 14, 2014. Nonetheless, the Turnpike filed a "Reply Letter-Brief" on or about June 11, 2014 without leave of court. Although the court does not consider the submission, it notes that the brief does not proffer any new or alternative arguments.

 Any reference to the "Green Acres Program" in any law, regulation or judicial proceeding or otherwise, means and "referjs] to the Office of Green Acres in the" NJDEP. N.J.S.A. 13:8C-24.

 The regulations were effective February 7, 2012, thus after the 2010 acquisition of the Subject by the Turnpike, and after the judgments of the County Board of Taxation. The regulations were readopted without amendment because the prior "Green Acres Program rules, N.J.A.C. 7:36” were slated to expire on July 2, 2011. 43 N.J.R. 252(a), supra; 44 N.J.R. 588(a) (Feb. 6, 2012). The readopted regulations were originally promulgated in 2005, effective January 3, 2006. See 37 N.J.R. 2364(a) (July 5, 2005); 38 N.J.R. 155(a) (repealing and proposing new rules under N.J.A.C. 7:36). At that time, the definitional section contained several new terms. 37 N.J.R. 2364(a), supra (explaining that "[m]any of the terms are new and are defined to explain their use relative to the various procedural requirements by which the Green Acres Program is administered. Some of the new terms in the definition subchapter are taken directly from the" GSPTA. "Other terms and definitions are continued from the existing rules, with modifications as necessary to update or clarify them." Ibid.).

 The definition of the term "State" did not change from its prior definition. See supra n. 2.

 N.J.A.C. 7:36-3.2(a)(1) deems, among others, a "parking authority, housing authority, or similar public agency without primary recreation and conservation responsibilities” as being ineligible for Green Acres funding. That regulation, however, is under Subchapter 3 which is titled "Local Government Unit Projects," and thus, could apply as a limitation to the term "local government unit” in the GSPTA.

 Under the other provisions of local property tax laws, property acquired by "the State" is exempt from local property tax after a certain period post-acquisition. See generally N.J.S.A. 54:4-3.3(a); 3.3(b). The statute includes property acquired by a State authority. Ibid. However, the exemption is on a going-forward basis, thus, roll-back taxes would still apply. See State by Comm'r of Transp. v. Township of Pohatcong, 9 N.J.Tax 528 (Tax 1988) Under this scenario, if the Turnpike were afforded the Green Acres roll-back exemption, but also be entitled to a going-forward exemption under N.J.S.A. 54:4-3.3(b), the 13-year payment-in-lieu of taxes required under the GSPTA (N.J.S.A. 13:8C-29(a)) to compensate municipalities for lost tax dollars when lands are acquired by the State "in fee simple for recreation and conservation purposes” could be defeated. Neither party explored the issue of whether the 13-year in-lieu payment would befall the Turnpike (if this court were to agree with Turnpike that the Subject’s acquisition was "by the State ... for recreation and conservation purposes") or the NJDEP (since the Subject was given to the NJDEP as part of the Turnpike’s mitigation obligation).

 The GSPTA also notes that the no portion of the roll-back taxes for which the exemption is provided "shall” be used to determine "the annual" in-lieu payments. N.J.S.A. 13:18C-29(b). This was raised as an issue in Township of Franklin v. Dep't of Envtl. Prot., 7 N.J.Tax 224, 227 (Tax 1984), aff'd, 7 N.J.Tax 657 (App.Div.1985) but was not decided because the complaint was dismissed on grounds of timeliness.

 As noted above, no portion of the Subject was designated as Preserved Farmland or Green Acres properties.