ANDREW, J.T.C.
In this proceeding plaintiff asserts that defendant, Rockaway Township, wrongfully denied farmland assessment for plaintiff’s woodland property for the tax year 1984.
Plaintiff, Mt. Hope Mining Company, a wholly-owned subsidiary of the Halecrest Company, owns three parcels of land totalling 1,281 acres located in Rockaway Township, New Jersey. The property consists of Block 229, Lot 10 (1,099.82 acres, of which plaintiff claims 1,044.72 should be assessed as farmland) and both Block 201, Lot 1 and Block 201, Lot 32 (181.18 acres combined, all of which plaintiff claims should be assessed as farmland). For the tax year 1984 plaintiff applied for farmland assessment for a total of 1,225.9 acres, the remaining 55.1 acres consisting of a former iron ore mining operation.
*572 After the township’s tax assessor denied plaintiff’s farmland assessment application, plaintiff appealed to the Morris County Board of Taxation which affirmed the assessor’s denial. Subsequently, plaintiff initiated this appeal seeking review of the county board judgment.
Defendant disputes plaintiff’s entitlement to farmland assessment on three grounds. Initially, it asserts that plaintiff failed to actively devote its property to woodland use “for at least two successive years immediately preceding the [1984] tax year” pursuant to N.J.S.A. 54:4-23.6(a). Secondly, it argues that because plaintiff’s property was used for nonagricultural purposes it was not “actively devoted” to agricultural use within the meaning of N.J.S.A. 54:4-23.2. Thirdly, defendant maintains that plaintiff’s violation of Rockaway Township’s ordinance regulating tree removal precludes farmland assessment under the rule established in Clearview Estates, Inc. v. Mountain Lakes, 188 N.J.Super. 99, 105, 456 A.2d 111 (App.Div. 1983). Defendant has conceded that plaintiff met all of the remaining requirements of the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq.
At trial, the following facts emerged. During the 1970’s plaintiff purchased the subject property in Rockaway Township with the intent of reactivating iron ore mines which dated back to the time of the Revolutionary War. The president of Hale-crest Company, Richard Hale, testified that, due to adverse market conditions in the late 1970’s, the subsidiary’s iron ore mining operations were first halted, and subsequently in 1979, completely terminated. Seeking new ways to generate income from the property, in the summer of 1980 Hale engaged the services of a recent forest management graduate, John Regallo, to initiate a woodland management program. In 1980 and 1981 Regallo marked, cut and sold an unspecified amount of timber from plaintiff’s property. Later in 1981 Hale engaged Richard Goodenough, an experienced consulting forester, to compile a more comprehensive and long range plan of forest management. Regallo’s prior work was incorporated into the woodland *573 management plan subsequently submitted to plaintiff by Goodenough.
After spending two days on the property in September 1981, Goodenough presented a letter contract dated October 4, 1981 to plaintiff detailing the scope, time frame and cost of his proposed forestry services. On November 12, 1981 plaintiff signed the contract. In November 1981 Goodenough took his first steps in preparing the formal woodland management plan which he submitted to plaintiff in April 1982.
The woodland management plan consists of a highly technical report delineating the present and future growth and development of plaintiffs woodland for the production of woodland income. Goodenough recommended that certain trees be cut and sold immediately for timber. In April 1982, having obtained approval from plaintiff, Goodenough began marking trees, and negotiated four timber sale agreements dated July 27, 1982, October 8, 1982, November 1, 1982 and February 21, 1983, respectively. The dollar amount of the contracts totalled $69,741. The third and fourth contracts had termination dates of April 1, 1983 and September 1, 1983, respectively, for the completion of timbering operations.
The woodland management plan also contains projected volume and growth rates for the uncut stands and the residual timber in the cut stands. Both Goodenough and Richard F. West, a professional forester and forestry consultant, testified that the cut and uncut areas were suitable candidates for continued growth, planning and cutting. At least twice a year since the termination of the fourth timbering contract, Goodenough has returned to plaintiffs land to reinvestigate growth.
On December 14, 1982 Rockaway enacted a tree removal ordinance, chapter 83A. Plaintiff not only had received notice by letter of the ordinance on July 20, 1983, but also admitted having attended town meetings concerning the enactment of *574 the ordinance.[1] Although plaintiff had applied in December 1984 for the required permit, as of January 1986 it had not obtained one.
In addition to initiating forest planning and cutting activities, plaintiff permitted certain other activities on its land. The Boy Scouts used the land in exchange for $1 a year;[2] Rockaway itself used a swimming area on one of the lakes in exchange for $1 a year, and members of the Rockaway Township Sportsmen, Inc. hunted and fished on the property in exchange for $1 a year. Plaintiff, however, never collected the fees. Although Rockaway charged a small fee for use of the swimming area by both township residents and nonresidents, plaintiff itself received no monies. In its brief defendant concedes that these nonagricultuial uses were incidental.
I.
Defendant contends that, contrary to the requirements of the act, N.J.S.A. 54:4-28.2, the subject property was not actively devoted to the production for sale of agricultural products for the requisite two full calendar years preceding the tax year in question. Moreover, defendant contends, because it provides benefits to the taxpayer at the expense of all the remaining taxpayers in the district, the statute ought to be construed against the taxpayer and, therefore, the statute demands exacting compliance with the two-year requirement. Green Pond Corp. v. Rockaway Tp., 2 N.J. Tax 273, 287, 289 (Tax Ct.1981), aff'd o.b. 4 N.J.Tax 534 (App.Div.1982).
The thrust of defendant’s argument is that because plaintiff was not bound by contract to cut or sell timber until April 12, 1982, plaintiff had not devoted its land to the production for sale of trees or forest products until at least April 12, 1982, or *575 in other words, for less than the two full pretax years (1982 and 1983) required by N.J.S.A. 54:4-23.6. Defendant distinguishes plaintiff’s case from that of a traditional farmer who, even without a contract to sell farm products, may be entitled to farmland assessment. Unlike plaintiff, defendant asserts, the traditional farmer already has an ongoing operation.
Plaintiff responds that devotion to the production for sale of trees or forest products does not depend on the presence of a legally binding contract to sell trees or forest products. Because traditional farmers qualify for farmland assessments without legally binding contracts to sell farm products, plaintiff maintains, the act permits preferential assessment by virtue of what a farmer does on his land, and not by virtue of whether a farmer is contractually bound to do what he does. The important question, plaintiff insists, is whether the taxpayer actually devoted his land to the production for sale of trees or forest products, and not whether he was contractually bound to do so.
Plaintiff contends that forestry operations were initiated in 1980 by Regallo, and were turned over to Goodenough in 1981. In November 1981, when plaintiff signed a contract to obtain a forest management plan, plaintiff argues, Goodenough began preparations essential to the subsequent cutting and sale of trees and forest products. Accordingly, plaintiff concludes, its land was devoted to agricultural use within the purview of N.J.S.A. 54:4-23.2 for two full calendar years prior to 1984.
The act requires that the taxpayer devote his land to agricultural use for two successive years prior to the year in which the taxpayer claims the preferential assessment. N.J.S.A. 54:4-23.2, -23.6. Consequently, plaintiff must prove its land was actively devoted to agricultural use for the years 1982 and 1983. Land more than five acres in area is deemed to be actively devoted to agricultural use when:
... the gross sales of agricultural ... products produced on the area above five acres together with any payments received under a soil conservation program have averaged at least $5.00 per acre per year during the 2-^year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to an average of at least $5.00 per year within a reasonable period of time; except in the case of *576 woodland and wetland, where the minimum requirement shall be an average of $0.50 per acre on the area above five acres. [N.J.S.A. 54:4-23.5; emphasis supplied]
During 1982 and 1983, the land in question generated gross lumber sales of $69,741, far exceeding the minimum required by statute.[3] The question remains, however, whether plaintiff had begun devoting its land to the statutory purpose as of January 1, 1982. Green Pond Corp., supra, 2 N.J. Tax at 287 (two-year period means two entire calendar years); see also N.J.A.C. 18:15-3.1 (the example in the regulation provides for the entire period of two calendar years). In Green Pond this court recognized that, with clear evidence of anticipated yearly gross sales of the required amount, land “planted with timber seedlings may qualify for farmland assessment even though sales of timber will not occur for many years.” Id. at 285. In other words, even without cutting or selling, in certain circumstances a taxpayer can actively devote land to the production for sale of trees or forest products within the meaning of the act. In the present case the testimony of both Goodenough and West indicates that, beginning as early as November 1981, pursuant to the November 12, 1981 letter contract, extensive planning and preparation were important in developing a comprehensive and thorough forest management plan. Moreover, plaintiff’s subsequent April 1982 agreement with Goodenough to select loggers for bidding and cutting depended on the pre-existence of a plan designating which stands and trees to cut.
Furthermore, this court accepts for limited purposes plaintiff’s analogy with the traditional farmer. Whether he is currently contractually obligated to sell his crop at harvest or not, a traditional farmer who has just planted his crop may be entitled to farmland assessment. It would be contrary to good business sense to require that a farmer contract months in *577 advance for the sale of an unknown quantity of, say, corn at an unknown market price. If, at the appropriate time, he does not sell his crop, then he risks losing his preferential assessment in addition to incurring liability for rollback taxes pursuant to N.J.S.A. 54:4-23.8. This court similarly rejects defendant’s contention that such a requirement ought to apply only to farmers who are just beginning their operations. The act applies to land actively devoted to agricultural or horticultural use and which has been so devoted for the two preceding years. The statute does not embody the additional and entirely unrelated requirement that, whether just beginning his farming operations or not, the owner of land be contractually obligated to sell his crop at harvest.
For the reasons stated, this court finds that plaintiff’s land was actively devoted to the production for sale of trees or forest products for the two full years immediately preceding 1984, pursuant to N.J.S.A. 54:4-23.2, -23.6.
II.
The second issue in this case is whether, even though the land in question supported certain recreational and sporting uses, plaintiff actively “devoted” its land to agricultural use. In arguing that the recreational and sporting uses prevented the land in question from being actively devoted to agricultural use within the purview of N.J.S.A. 54:4-23.2, defendant relies principally upon Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 386 A.2d 1357 (App.Div.1978). According to the court in Urban Farms, defendant asserts, plaintiff must prove that the exclusive use of the property is agricultural. Because by admission the agricultural use is not the only use of plaintiff’s land, defendant continues, the land has failed the exclusive use test.
Ignoring defendant’s assertion of an exclusive use test, plaintiff responds that, because the dominant use of the property is agricultural, its land is actively devoted to agricultural use. Plaintiff relies upon East Orange v. Livingston Tp., et al, 102 *578 N.J.Super. 512, 246 A.2d 178 (Law Div.1968), aff’d 54 N.J. 96, 253 A.2d 546 (1969) and Green Pond v. Rockaway Tp., 2 N.J.Tax 273 (Tax Ct.1981), aff’d o.b. per curiam 4 N.J.Tax 534 (App.Div.1982).
Defendant obtains its exclusive use test from Urban Farms. In that case the Appellate Division used the word “exclusively” in two instances. 159 N.J.Super. at 66-67, 386 A.2d 1357. The first use responded to the taxing district’s contention that forestland or woodland, in and of itself, is not entitled to farmland assessment. In rejecting the town’s position the court stated that, “land ... actually and exclusively devoted to such a use [meaning solely woodland] ... may qualify for farmland assessment.” Thus, the court’s use of the word exclusive in this context does not support defendant’s position.
The court’s second use of the word exclusive was in response to the taxing district’s contention that if the act permitted farmland assessment for solely forestland or woodland then it was unconstitutional because it exceeded the scope and purpose of the enabling constitutional provision. 159 N.J.Super. at 66, 386 A.2d 1357. Relying entirely upon East Orange v. Livingston Tp., supra, as authority, the court stated, “the act provides that only when the land is actively and exclusively devoted to the agricultural use of commercial production of forest products can it be granted farmland assessments.” 159 N.J. Super. at 67, 386 A.2d 1357. The difficulty is that East Orange v. Livingston Tp. set forth a test of dominant, and not of exclusive, use. Justice (then Judge) Handler in East Orange recognized that there can be multiple uses of a parcel of land, some agricultural and some nonagricultural and that multiple use would not automatically disqualify it for farmland assessment, but in order to qualify the agricultural use must predominate. In making this clear and well reasoned determination Justice (then Judge) Handler examined the history and purpose of the act, the primary meaning of the words used in the statute, specifically, the word “devote,” and the practical sense and objectives of the act.
*579 Regrettably, as this court noted in Green Pond, supra, 2 N.J.Tax 273, n. 4, by going beyond a test of predominant use set forth in East Orange, the Appellate Division has created an inconsistency. East Orange is clearly the only opinion of the two that fully explored the meaning of the word “devoted” in arriving at a dominant use test. Moreover, since East Orange was affirmed per curiam, essentially for the reasons expressed by the trial court, 54 N.J. 96, 253 A.2d 546 (1969), the dominant use test must control.
For purposes of farmland assessment, then, only when the agricultural use is not the “dominant” use, is the land not actively devoted to agricultural use. Because defendant has conceded that here the nonagricultural uses were merely incidental, plaintiff’s agricultural use of its land constituted the dominant use pursuant to East Orange, supra, and Green Pond, supra. Accordingly, this court finds that plaintiff devoted its land to agricultural use within the meaning of N.J.S.A. 54:4-23.2.
III.
The third and final issue to be decided in this case is whether plaintiff’s violation of defendant’s local tree removal ordinance precludes farmland assessment. Defendant contends that, if committed in connection with the agricultural use for which the owner seeks farmland assessment, the violation of a local regulatory ordinance constitutes a sufficient reason for denying farmland assessment. Defendant claims that this case is indistinguishable from both Clearview Estates, Inc. v. Mountain Lakes, 188 N.J.Super. 99, 456 A.2d 111 (App.Div.1982) and L & Z Realty Co., Inc. v. Ringwood, 6 N.J.Tax 450 (Tax Ct.1984). According to the holdings in Clearview and L & Z Realty, defendant continues, in order to obtain the benefit of farmland assessment, “[the] use must be lawful.” Clearview, supra, 188 N.J.Super. at 105, 456 A.2d 111; accord L & Z Realty, supra, 6 N.J.Tax at 454. Defendant claims that plaintiff’s use (tree farming without a permit) was not lawful, and consequently, *580 because it would permit a wrongdoer to profit by his illegal conduct, granting farmland assessment to plaintiff is against public policy. Whippany Paper Board Co. v. Alfano, 176 N.J.Super. 363, 376, 423 A.2d 648 (App.Div.1980).
Plaintiff responds that, unlike Clearview, Eockaway’s ordinance merely requires a permit for tree removal, and does not render the agricultural use, tree farming, illegal. Similar to operating a motor vehicle and building houses, plaintiff observes, tree farming is a lawful activity even though laws and regulations require a permit. Moreover, plaintiff concludes, the municipality has enforcement rights for violations of its ordinances in another forum, municipal court, and not in the Tax Court.
The Farmland Assessment Act specifically requires that land be “actively devoted to agricultural or horticultural use.” N.J.S.A. 54:4-23.2. The court in Clearview added the requirement that the “use must be lawful, i.e., a permitted use.” Clearview, supra, 188 N.J.Super. at 105, 456 A.2d 111; accord L &Z Realty, supra, 6 N.J.Tax at 454.
In Clearview, according to the taxing district’s zoning ordinance, with or without a permit, forestry or logging operations were not a permitted use, and consequently, the land could not qualify for farmland assessment. Unlike Clearview, however, it is undisputed that plaintiff’s forestry operations here constituted a permitted use. Defendant’s regulatory ordinance does not render tree farming unlawful, but rather regulates the manner in which the activity of tree removal is to be conducted.[4]
Defendant seeks to broaden Clearview to deny farmland assessment for even permitted agricultural or horticultural uses whenever such use results in the violation, however minor, *581 of a local ordinance (even a nonzoning ordinance). Such an expansive interpretation of Clearview, however, in my view, would contravene the requirement of our Constitution and its implementing legislation that property receive the benefit of farmland assessment if the actual use is in accord with the constitutional and statutory provisions. Terhune v. Franklin Tp., 107 N.J.Super. 218, 258 A.2d 18 (App.Div.1969) (even if it constitutes part of the minimum lot size for the farmhouse, because actually used for agriculture, the land was assessed as farmland); Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976) (although taxpayer may be holding the land for eventual resale or for speculation, because the land was actually “devoted to the production for sale of plants,” it was entitled to farmland assessment); Centex Homes of N.J., Inc. v. Manalapan, 4 N.J.Tax 599 (Tax Ct.1982), certif. granted 94 N.J. 517, 468 A.2d 175 (1982), remanded to App.Div. 95 N.J. 218, 470 A.2d 433 (1983), app. dism. upon stipulation (May 24, 1984) (because farmland assessment depends on actual or current use, municipal land use law imposing rollback taxes upon preliminary subdivision, site plan or planned development approval violates preferential treatment afforded farmland in Art. VIII, § 1, ¶ 1(b), of the New Jersey Constitution).
The purpose of the constitutional provision for farmland, N.J. Const. (1947), Art. VIII, § 1, ¶ 1, and the implementing legislation i.e., the Farmland Assessment Act, was to benefit landowners who complied with the objective criteria set forth even though that might protect those who would not be considered “farmers” in the traditional sense. Terhune v. Franklin Tp., supra; Andover Tp. v. Kymer, supra; Urban Farms, Inc. v. Wayne Tp., supra; N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 350 A.2d 69 (App.Div.1975), aff’d o.b. 73 N.J. 180, 373 A.2d 652 (1977); Centex Homes of N.J., Inc. v. Manalapan, supra. In Centex Homes of N.J., Inc. v. Manalapan, the Tax Court observed:
... the framers of the constitutional amendment realized that it would not prevent speculation and that speculators could benefit from the preferential treatment accorded by the farmland assessment program. The Governor’s *582 Committee made a conscious policy decision that eligibility would be premised solely on the land qualifications. If land was utilized for agricultural or horticultural use as outlined in the constitutional amendment and the implementing legislation, preferred valuation, assessment and taxation would follow. [4 N.J.Tax at 616; emphasis supplied]
In the present case, because the land was both actively devoted to a permitted agricultural use, and fulfilled the remaining objective criteria set forth in the statute, it should be assessed in accordance with the dictates of the constitutional and statutory farmland provisions.
Moreover, focusing on the objective criterion of use furthers the policy considerations behind the Farmland Assessment Act. Appointed to develop recommendations with respect to farmland assessment, the Governor’s Committee considered the following objectives:
(a) the desirability of continuing the family farm in New Jersey and the farmer’s problem;
(b) the interests of the municipalities and the problems of the assessors; and, finally,
(c) the interests of all the people of New Jersey in maintaining “open” space, the beauty of our countryside and in the availability of agricultural products fresh from the farm. [Report of the Governor’s Farm Land Assessment Committee (March 20, 1983) ]
Plaintiff’s forestry operations not only promote “open” space and the beauty of the countryside, but also increase the availability of agricultural products. Therefore, granting farmland assessment fulfills the policy considerations underlying the Farmland Assessment Act.
Finally, this conclusion does not interfere in any way with defendant’s authority to enact and enforce regulatory ordinances under its police powers.[5] If violation of a regulatory requirement is claimed, the taxing district- is free to seek *583 compliance with its municipal ordinance in the appropriate forum. Assessment at farmland value does not interfere or conflict with this process. Rather than exerting pressure on its taxpayers to conform with regulatory ordinances through local property tax assessments, the municipality should employ the appropriate avenues available to it in other judicial forums.
Accordingly, I conclude that plaintiff’s violation of defendant’s tree removal ordinance does not preclude farmland assessment.
In light of the foregoing, I conclude that plaintiff has established its entitlement to farmland assessment for tax year 1984. Since no proofs were adduced relative to the appropriate value of the subject for farmland purposes, the parties are directed, pursuant to R. 8:9-3 and paragraph 13 of the pretrial order entered in this matter, to submit agreed upon assessments within ten days so that judgment may be entered. If the parties are unable to agree, the provisions of R. 8:9-4 shall apply.

 It is unclear from the record whether plaintiff became aware of the particular permit provision as a result of those meetings.

 Presumably, the use by the Boy Scouts was both recreational and educational. The record, however, is completely silent in this regard.

 N.J.S.A. 54:4-23.5 requires that plaintiffs land generate minimum gross sales of $2,220.90 in order to qualify for farmland assessment ($500 for the first five acres plus 50e X 1220.9 additional acres = $1,110.45 X 2 years = $2,220.90.)

 In c. 83A, § 2, of defendant’s ordinance provides:
No person shall farm, harvest, cut or remove any tree upon any Relevant Land within the Township of Rockaway unless such removal, cutting, harvesting or farming is done in accordance with regulations and provisions of this chapter.

 The objective of the defendant’s tree removal ordinance as set forth in c. 83A, § 1 is:
The purpose of this chapter is to control and regulate indiscriminate and excessive removal, cutting, harvesting and destruction of trees and to control, regulate and prevent conditions which cause increased surface drainage, sedimentation and soil erosion, cause decreased soil fertility and impair the stability and value of real estate, all of which conditions are, and will be in the future, a deterrent to public safety, health and welfare.