**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE TAX COURT**
**COMMITTEE OF OPINIONS**

## TAX COURT OF NEW JERSEY



**KATHI F. FIAMINGO**
**JUDGE**

Olde Historic Courthouse
120 High Street
P.O. Box 6555
Mount Holly, New Jersey 08060
609 288-9500, Ext. 38303 Fax 609 288-9475

November 7, 2022

Via eCourts
Craig S. Provorny, Esq.
George W. Crimmins III, Esq.
Herold Law, P.A.

Via eCourts
Andrea E. Wyatt, Esq.
Halm & Cipriani

RE:  Russo v. Township of Plumsted
     Docket No. 010327-2020

Counsel:

This letter constitutes the court's opinion with respect to the motion for summary judgment filed by defendant, Township of Plumsted. For the reasons explained more fully below the motion is denied.

### I.  Finding of Facts and Procedural History

The following facts are derived from the statement of material facts, to the extent that such facts are not in dispute and are sufficiently supported. Any dispute in the facts is noted.

The property that is the subject of this matter contains approximately 90.67 acres of land located in Plumsted Township ("defendant"), known as 27 Hopkins Lane, Block 58, Lot 13 and 14 ("subject property"), owned by Sam Russo ("plaintiff"). Plaintiff filed an application for Farmland Assessment in June 2019 to qualify 87.67 acres of the subject property for farmland

   

assessment pursuant to the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq. Plaintiff's application indicates that sixty-five acres of the subject property are used for harvested field crops of corn and wheat, and that the farm on the subject property has 331 livestock. Plaintiff's application further indicates that plaintiff earned $3,500.00 in farmland generated income.

Despite the information on the Farmland Application filed, plaintiff's "Animal Sale Log" for 2019 indicates that plaintiff received $31,651.31 for the sale of animal livestock. Further, Schedule F to plaintiff's 2019 Federal Income Tax Return reflects gross income of $508,759.00 was generated.

On August 5, 2019 the New Jersey Department of Environmental Protection ("DEP") filed a complaint and order to show cause in the Ocean County Superior Court[1] wherein the NJ DEP sought a restraining order "to prohibit certain recycling, solid waste and industrial activities on the [subject] property" ("the DEP action"). The activities concerned in the DEP action included "soil mounds at the property; the paving of farm roads, parking lots and livestock pens with asphalt millings and recycled crushed aggregate and the use of wood chips, leaves, grass clippings, clean fill, and top soil." During the course of the DEP action, a State Investigator calculated that from April 5, 2018 through April 5, 2019, plaintiff receive $300,800 for the receipt of fill dirt, millings, woodchips, food waste, leaves and grass clippings.

In October 2019 defendant's tax assessor denied plaintiff's farmland assessment application on the basis that the dominant use of the subject property was not agricultural. The reason for the denial was the assessor's determination that the dominant use of the subject property

---

[1] NJ Department of Environmental Protection v. Russo, et als., Docket No. OCN-L-001974-19.

was not agricultural and that the income generated from the nonagricultural sources exceeded the farmland generated income.

During the course of the DEP action, plaintiff testified that he accepted more than 1,200 loads of fill dirt from various sources for fees at the subject property. The court found that between April 2018 and April 2019, plaintiff charged tree companies and landscapers to "dump 229 loads of woodchips, 203 loads of leaves and 444 loads of grass clippings" as well as 300 loads of asphalt millings and 25 loads of crushed concrete.

Plaintiff filed an appeal of the denial on April 24, 2020[2] with the Ocean County Board of Taxation which affirmed the defendant's denial on July 27, 2020. Thereafter plaintiff timely filed the within appeal.

Defendant filed the instant motion on August 11, 2022. Plaintiff filed opposition on September 13, 2022. Defendant filed a reply brief to plaintiff's opposition on September 30, 2022. Oral argument was held on October 7, 2022.

**LEGAL ANALYSIS**

Summary Judgment

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The trial court's "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill v. Guardian

---

[2] Generally, the filing deadline for an appeal of the denial of farmland assessment to the county board of taxation is "on or before April 1 of the tax year." N.J.S.A. 54:4-23.13b. As a result of the onset of the COVID-19 pandemic, however, the deadline for filing an appeal was extended to July 1, 2020. L. 2020, c. 35. Thus, plaintiff's appeal was timely.

Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The trial judge must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Ibid.

When the facts present "a single, unavoidable resolution" and the evidence "is so one-sided that one party must prevail as a matter of law," then a trial court should grant summary judgment. Ibid. "The party defending against a motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in its favor." School Alliance Ins. Fund v. Fama Constr. Co., 353 N.J. Super. 131, 135-136 (Law Div. 2001) (citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986)). All material facts submitted by the movant which are sufficiently supported are to be deemed admitted unless the other party specifically disputes such facts. See R. 4:46-2(b).

Farmland Assessment Act

The Farmland Assessment Act, N.J.S.A. 54:4-23.1, et seq. (the "Act") was adopted "to preserve the family farm by providing farmers with some measure of economic relief by permitting farmland to be taxed on its value as a continuing farm." Urban Farms, Inc. v. Twp. of Wayne, 159 N.J. Super. 61, 67 (App. Div. 1978). Thus,

> [f]or general property tax purposes, the value of land, not less than 5 acres in area, which is actively devoted to agricultural or horticultural use and which has been so devoted for at least the 2 successive years immediately preceding the tax year in issue, shall, on application of the owner, and approval thereof as hereinafter provided, be that value which such land has for agricultural or horticultural use.
>
> [N.J.S.A. 54:4-23.2]

4

For the purposes of the Act

> land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to . . . grains and feed crops; dairy animals and dairy products; poultry and poultry products; livestock, including beef cattle, sheep, swine, horses, ponies, mules or goats, including the breeding, boarding, raising, rehabilitating, training or grazing of any or all of such animals,
>
> [N.J.S.A. 54:4-23.3.]

The Act also contains a financial requirement for land to qualify for farmland assessment:

> [L]and, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced thereon . . . have averaged at least $1,000.00 per year during the two-year period immediately preceding the tax year in issue . . .
>
> In addition, where the land is more than five acres in area, it shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced on the area above five acres . . . have averaged at least $5.00 per acre during the two-year period immediately preceding the tax year in issue . . . .
>
> [N.J.S.A. 54:4-23.5.]

The Act grants a qualifying property treatment similar to a partial tax exemption. It is, therefore, construed against the party seeking preferential treatment. Van Wingerden v. Tp. of Lafayette, 18 N.J. Tax 81, 94 (Tax 1999), aff'd, 335 N.J. Super. 560 (App. Div. 2000). When the application is denied, the assessor's determination is presumed to be correct, and the taxpayer bears the burden of proving entitlement to farmland assessment. Hovbilt, Inc. v. Tp. of Howell, 138 N.J. 598, 620 (1994); Brighton v. Bor. of Rumson, 22 N.J. Tax 39, 52 (2005), aff'd, 23 N.J. Tax 60 (App. Div. 2006); Miele v. Tp. of Jackson, 11 N.J. Tax 97, 99 (App. Div. 1989). In order to demonstrate entitlement to relief a taxpayer must produce sufficient competent evidence "'definitive, positive, and certain in quality and quantity to overcome the presumption.'" Wyer v.

Tp. of Middletown, 16 N.J. Tax 544, 546 (Tax 1997) (quoting Tp. of Byram v. Western World, Inc., 111 N.J. 222, 235 (1988)); accord Atlantic Coast LEH, LLC v. Tp. of Little Egg Harbor, 26 N.J. Tax 151 (2011).

Although defendant concedes that the subject property is utilized as a farm, it asserts that it is also used for other non-agricultural commercial purposes. "[T]here can be multiple uses of woodlands or forests, which could include or combine the production of water, wood, recreation, education and the like. Depending upon the particular lands involved, one use tends to become dominant." City of East Orange v. Tp. of Livingston, 102 N.J. Super. 512, 536 (Law. Div. 1968), aff'd, 54 N.J. 69 (1969). "If the dominant use of the property is a use other than an agricultural or horticultural use, the property is not entitled to preferential farmland assessment." Atlantic Coast LEH, LLC v. T\p. of Little Egg Harbor, 26 N.J. Tax at 161. See also Green Pond Corp. v. Tp. of Rockaway, 2 N.J. Tax 273 (Tax 1981), aff'd, 4 N.J. Tax 534 (App. Div. 1982). When faced with a parcel requesting farmland assessment also used for non-agricultural activities, "the court must determine if the agricultural or horticultural use is the dominant use of the property." Tp. of Wantage v. Rivlin Corp., 23 N.J. Tax 441, 446 (2007).

Defendant asserts that the acceptance of various materials from third parties, for a fee, constitutes a non-agricultural commercial use of the property. Defendant further asserts the substantial disparity in income generated from the non-agricultural uses versus the income generated from the agricultural uses of the subject property clearly demonstrates that the non-agricultural use is the dominant use.

Defendant contends that the acceptance of materials from third parties constitutes a commercial recycling business not qualifying as an agricultural purpose and that whether, or if, plaintiff "recycles" such materials into its farming operation is of no moment. Defendant relies in

6

part on N.J.A.C. 18:15-1.1 which defines agricultural use for purposes of the Act, and notes that nowhere within the definition is listed "commercial recycling dumping service in which various companies pay tipping fees . . . to dump various materials onto the property."

In opposition plaintiff first maintains that the acceptance of various materials from third parties does not constitute a commercial enterprise in and of itself, but instead constitutes activities part and parcel of its farming enterprise. That is, plaintiff maintains that the separated food waste and grass clippings accepted at the subject property are used as feed for cattle and pigs, a process approved by the N.J. Department of Agriculture; the wood chips received are utilized both as bedding material for the livestock and as a base upon which the source separated food byproducts are stored, which is a standard practice for farms; the topsoil and clean fill dirt received are used to reestablish, refurbish and recondition animal areas and/or previous areas impacted by the cattle to keep those areas dry, minimize water pooling and absorb the water and run it through a buffer; and the asphalt millings are utilized to pave roads and a parking lot at the farm. Plaintiff further avers that the crushed concrete is purchased to be utilized as a base before pouring concrete in the barns, and to blend with asphalt millings. Plaintiff asserts that all of the materials accepted from third parties are utilized for his farming operations. Plaintiff maintains that as a savvy business person, he has built the better "mousetrap," having others pay him to accept materials he would otherwise have to purchase to keep and maintain his farm and his livestock. Plaintiff maintains that the procedures he employs have been reviewed and approved by various experts in the agricultural field. Thus, the primary contention of the defendant that there is a use of the subject property for other than agricultural uses is in dispute. [3]

---

[3]Defendant relies in large part on the findings of the trial court in an action filed in the DEP action which resulted in an order dated April 4, 2020 wherein plaintiff was directed to apply for a stormwater permit; terminate the practice of receiving fill material, including fill dirt, crushed

Moreover, except to reference the admittedly overwhelming difference in income between the farming operations and the other uses, the defendant provides no facts to this court to demonstrate that the alleged non-farming use is dominant. The only undisputed facts before this court as to the dominant use of the subject property is the income generated by each operation. Defendant argues that when looking at the income generated from the operations at the subject property, it is unquestionable that the non-agricultural use dominates. That factor is, however, only one such consideration in the determination of dominant use.

In reviewing the question of which use of a property is dominant, the courts have considered all relevant facts in making a determination. In <u>Atlantic Coast LEH v. Tp. of Little Egg Harbor</u>, 26 N.J. Tax 161, upon which both parties rely, the property in question was used both as an apiary and as the location for a cellular phone tower. The income generated from the agricultural uses barely met the required income under the statute, while the income from the non-agricultural cell tower use was nearly eight times greater. That disparity in income was a factor considered by the court, but was not determinative. In addition to the income the court reviewed the history of the taxpayer's involvement in the property, finding that the taxpayer's interest in that property was to construct a cellular telephone tower for commercial purposes. Further the court found that from a physical perspective, the cellular tower's sheer size dominated the physical aspects of the property, dwarfing the beehives; and that operationally, neither use as a cellular tower or the keeping of bees, required human presence at the property. Based on the totality of

---

concrete or other construction debris, asphalt millings, woodchips and leaves; were permitted to accept grass clippings of no more than 19,040 pounds per day, deemed necessary to conduct farming operations; and cease all recycling/composting activity for off-site delivery without an appropriate permit; During the course of that litigation, the DEP abandoned their claim that the separated food waste accepted and used for feed should be included in the litigation. Order and opinion issued April 3, 2020 by Hon. Craig L. Wellerson, P.J.Cv.P.

the undisputed facts presented, the court found that the non-agricultural use of the property dominated over the apiary activity.  Id. at 163-65.

In Green Pond Corp. v. Tp. of Rockaway, 2 N.J. Tax 273, the court found that the undeveloped woodland adjacent to a private residential lake community did not qualify for farmland assessment.  In reaching that conclusion the court viewed the facts and found that the court held that the recreational use of the property was "consistent with the nature of the entire . . . tract as a residential community and the existence of the plaintiff corporations to manage that community for the benefit of its residents.  Id. at 291.  The court found that it the agricultural use was designed primarily to satisfy the requirements of the farmland assessment statutes.  Id. at 290.

Here there has been no proof submitted that plaintiff acquired the subject property for a non-agricultural purpose, or that the agricultural use of the subject property was designed solely to satisfy the farmland assessment statutes.  Based on the evidence before the court, it appears that plaintiff operates a farming operation at the subject property, including the growing of crops and the keeping of livestock.  The operation of the farm requires significant human presence at the subject property.  Neither party has presented any evidence of the physical occupation of the subject property for the agricultural use versus the alleged non-agricultural use of the subject property; nor has any evidence as to the time required to be devoted to each such use been provided. With the exception of the income earned by the plaintiff, defendant provided nothing to the court to demonstrate that the alleged non-agricultural use of the subject property was dominant. Moreover, plaintiff vigorously maintains that the third-party materials accepted are used by the plaintiff in the operation of his farm.

Viewing the evidence presented in the light most favorable to the plaintiff as the non-moving party, the court finds that the plaintiff has demonstrated that a genuine issue of material

fact exists preventing the grant of summary judgment to the defendant. There is a genuine issue of material fact as to whether the acceptance of third-party materials, for a fee - or for no fee - constitutes a use of the subject property for recycling or dumping which dominates over the agricultural use. Even assuming that the acceptance of materials, for a fee, as described herein constitutes a non-agricultural use of the subject property, the court cannot conclude on the uncontroverted evidence presented, that the alleged non-agricultural use dominates over the admitted farmland use of the subject property. In light of the assertions made by plaintiff, disparity in income alone is insufficient to conclusively establish that the dominant use of the subject property is non-agricultural.

**CONCLUSION**

Accordingly, defendant's motion for summary judgment is denied. This matter will be scheduled for a plenary hearing.

Very truly yours,

/s/ Kathi F. Fiamingo

Kathi F. Fiamingo, J.T.C.